## EFFA A. OWENS vs. G. CLEM GRAETZEL.

*Interest—When Payable in Advance—Construction of Mortgage—Foreclosure Sale—Time of Advertisement.*

Interest accumulates from day to day, but is not payable until the date upon which the principal becomes due and payable, unless there is a different contract between the parties as to the payment of interest.                                    p. 368

If there is no agreement to the contrary, interest is payable at the certain specified times after the borrower has had the use of the principal for the specific time for which interest is charged.
                                                              p. 369

Usury cannot be urged as an objection to the ratification of a mortgage sale, and can only arise upon the statement of a final account by the auditor, but the fact that a loan secured by mortgage involved a usurious charge may be referred to as one of a number of incidents creating an atmosphere unfavorable to the mortgagee from the standpoint of a court of equity. p. 370

A mortgage, prepared by the mortgagee, is, in case of doubt, to be construed most strongly against him.                    p. 370

A mortgage executed on the first day of August, and providing for the payment of interest quarterly on the first days of August, November, February and May, *held* not to require the payment of each quarter's interest in advance, although the first quarter's interest was paid at the time of the execution of the mortgage, the mortgagee having prepared the mortgage, and

having consequently been in a position to provide in unambiguous terms for the payment of interest in advance if it was so intended.          pp. 368, 371

A proceeding to sell mortgaged property in Baltimore City, under Acts 1898, ch. 123, secs. 720-732, being entirely statutory, it is necessary to comply strictly with the provisions of the statute, and the terms of the decree for sale being, by force of the statute, made a part of the statute, they must be as strictly complied with as if they were in terms embraced in the statute.
pp. 372, 373

A requirement in the decree of "at least three weeks' notice" by advertisement in daily papers means three clear weeks, and the date of the first publication and the day of sale must both be excluded.          p. 373

When the twelfth of November was the day of the first publication of the advertisement, and the third of December the day of the sale, there was not an advertisement of "three clear weeks," as required by the decree          p. 373

*Decided July 22nd, 1924.*

Appeal from the Circuit Court No. 2 of Baltimore City (DAWKINS, J.).

Proceeding by G. Clem Graetzel against Effa A. Owens for the sale of property under a mortgage. From a decree ratifying the sale, said Effa A. Owens appeals. Reversed.

The cause was argued before PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and BOND, JJ.

*James Morfit Mullen,* for the appellant.

*Frank Driscoll,* with whom was *George H. Leimkuhler* on the brief, for the appellee.

DIGGES, J., delivered the opinion of the Court.
This is an appeal from a decree of Circuit Court No. 2 of Baltimore City overruling exceptions to the ratification of

a mortgage sale and finally ratifying the same. The facts as
disclosed by the record are substantially as follows: On the
first day of August, 1923, the appellant, Effa A. Owens,
borrowed the sum of $3,200 from the appellee, and to secure
the payment thereof executed a mortgage on certain lease-
hold property located in Baltimore City, particularly de-
scribed in said mortgage as lying on the north side of
Brighton Street, which property belonged to the appellant.
The portions of said mortgage necessary to be considered for
the proper determination of the case are as follows:

"This mortgage, made this 1st day of August, in
the year one thousand nine hundred and twenty-three,
by and between Effa A. Owens, formerly Effa A. Pat-
terson and Harry Hazlip, mortgagors, of the City of
Baltimore, in the State of Maryland, of the first part,
and G. Clem Graetzel, mortgagee, of the second part.

"Whereas, the said mortgagee hath this day lent
unto the mortgagors the sum of thirty-two hundred
($3,200.00) dollars, to be repaid two years after date,
with interest at six per cent., payable quarterly on the
first days of August, November, February, May, and
for which principal sum of thirty-two hundred
($3,200.00) dollars, the said mortgagors have passed
unto the mortgagee their negotiable promissory note
of even date herewith, payable two years after date,
with interest aforesaid. * * *

"Provided, that if the said mortgagors, their execu-
tors, administrators, shall well and truly pay or cause
to be paid the aforesaid principal sum of thirty-two
hundred ($3,200.00) dollars and all the installments of
interest thereon when and as each of them shall re-
spectively be due and payable as aforesaid and shall
perform each and all of the covenants herein on their
part to be performed, then this mortgage shall be void.

"And the said mortgagors do hereby declare and
assent to the passing of a decree by the Circuit Court
of Baltimore City or the Circuit Court No. 2 of Balti-
more City, for a sale of the property hereby mortgaged,
in accordance with chapter 123, sections 720 to 732, in-
clusive, of the Laws of Maryland, passed at the Janu-

ary session in the year 1898, or any supplements or additions thereto. And in case of any default being made in the payment of the aforesaid mortgage debt, principal or interest, in whole or in part at the time or times limited and mentioned for the payment of the sum as aforesaid, or in case any default being made in any covenant or conditions of this mortgage, then the whole mortgage debt hereby intended to be secured shall be deemed due and payable, and sale of said mortgaged property may be made by the trustee or trustees named in such decree as may be passed, as aforesaid, for the sale of said property; or upon any such default, as aforesaid, a sale may be made by the said party of the second part, his executors, administrators or assigns, or by George H. Leimkuhler, their duly constituted attorney or agent, under Article LXVI, sections 6 to 10, inclusive, of the Maryland Code (1904), Public General Laws, or under any other general or local laws of the State of Maryland relating to mortgages. And upon any sale of said property, under the powers hereby granted, the proceeds shall be applied as follows, to wit: First, to the payment of all expenses incident to said sale, including a commission to the party making sale of said property equal to the commission usually allowed trustees for making sale of similar property by virtue of a decree of a court having equity jurisdiction in the State of Maryland, and a reasonable attorney's fee to the attorney instituting or conducting the foreclosure proceedings; second, to the extinguishment of all claims of the party of the second part, his executors, administrators or assigns hereunder, whether the same shall have then matured or not; and third, the balance, if any, to the said parties of the first part, their executors, administrators or assigns."

This mortgage was duly recorded. At the time of the execution of the mortgage, the mortgage settlement was made in the office of the appellee, who is an attorney, and after deducting the amounts shown on the settlement sheet, the appellee gave to the appellant his check payable to Effa A.

Owens and Harry Hazlip for $1,207.27. These deductions included amounts for the settlement of mortgages that were then upon the property, and also an item of $320 paid to A. R. Whiting as a fee for the loan then being made, and also an item of $48 for three months interest in advance. These deductions further included various items incident to releasing the former mortgage, title fee, conveyancing, stamps or note, taxes, insurance, water rent, etc.

On November 8th, 1923, the appellant through his attorney, George H. Leimkuhler, filed a petition in Circuit Court No. 2 of Baltimore City praying that a decree might be passed for the sale of said property in accordance with the terms of said mortgage, at the same time filing the mortgage as an exhibit. On the same day the judge then sitting in said court passed the following decree:

"The petition and exhibit in the above cause having been submitted, the proceedings therein were by the court read and considered.

"It is thereupon this 8th day of November, in the year nineteen hundred and twenty-three, by the Circuit Court No. 2 of Baltimore City, adjudged, ordered and decreed, that the mortgaged property in the proceedings mentioned to be sold, at or after any one of the periods limited in the mortgage filed for the forfeiture of said mortgage; that George H. Leimkuhler be and he is hereby appointed trustee to make said sale, and that the course and manner of his proceedings shall be as follows: He shall first file with the clerk of this court a bond to the State of Maryland, executed by himself, and a corporate surety or sureties to be approved by this court, or by the clerk thereof, in the penalty of sixty-four hundred ($6,400.00) dollars, conditioned for the faithful performance of the trust reposed in him by this decree, or to be reposed in him by any future decree or order in the premises; he shall then proceed to make the said sale, having given at least three weeks' notice by advertisement, inserted in such daily newspaper or newspapers published in the City of Baltimore, as he shall think proper, of the

time, place, manner and terms of sale, which shall be
one-third cash, the balance in six and twelve months,
or all cash, as the purchaser may elect, the credit
payment to bear interest from the day of sale, and to
be secured by the note or notes of the purchaser or
purchasers, endorsed to the satisfaction of the said
trustee; and as soon as may be convenient after any
such sale or sales, the said trustee shall return to this
court a full and particular account of his proceedings
relative to such sale, with an affidavit annexed of the
truth thereof and of the fairness of said sale; and on
obtaining the court's ratification of the sale, and on the
payment of the whole purchase money (and not be-
fore) the said trustee shall by a good and sufficient
deed to be executed, acknowledged and recorded, ac-
cording to law, convey to the purchaser or purchasers,
his, her or their assigns the property and estate to him,
her or them, sold, free, clear and discharged from all
claims of the parties hereto, petitioner and mortgagors,
and those claiming by, from or under them, or either
of them. And the said trustee shall bring into this
court the money arising from said sale, to be dis-
tributed under the direction of this court, after deduct-
ing the costs of this suit, and such commissions to the
said trustee as this Court shall think proper to allow
in consideration of the skill, attention and fidelity
wherewith he shall appear to have discharged his trust;
provided, that before the sale hereinbefore decreed
shall be made, a statement of the mortgage claim, duly
verified by affidavit, as required by law, be filed in said
cause."

In pursuance of said decree the said attorney, George H.
Leimkuhler, appointed trustee therein, advertised the prop-
erty for sale by insertion of the advertisement in the Daily
Record, a daily paper printed and published in Baltimore
City, the first insertion being on November 12th, 1923, and
the sale was advertised in the same manner on the following
subsequent dates: November 16th, November 19th, Novem-
ber 23rd, November 26th, November 30th, December 1st and

December 3rd, 1923. The sale took place as advertised, on December 3rd, 1923, at four o'clock P. M. on the premises, and the property was purchased by Mildred B. Whiting at and for the sum of $4,050. The trustee filed a report of the sale on December 6th, 1923, and on December 11th, 1923, the appellant filed exceptions to the ratification of the said sale, and for grounds of her exceptions assigned the following reasons: 1. Because there has been no default in the mortgage herein proceeded on. 2. Because there was no demand or notice of default by the mortgagee or assignee. 3. Because bond of the trustee herein is defective and was not filed in due time. 4. Because no sufficient notice of sale was given. 5. Because at the time of the first advertisement of sale, no sufficient bond had been filed by the trustee. 6. Because of fatal defects appearing upon the face of the proceedings herein. 7. Because of inadequacy of price for which the property referred to in these proceedings was reported to have been sold. 8. And for other reasons to be shown at the hearing of these exceptions.

These exceptions were heard on testimony produced by the respective parties in open court, and on February 11th, 1924, the court passed an order overruling the exceptions and finally ratifying and confirming the sale. It is from this final order that the appeal in this case is taken.

There are numerous reasons assigned in the exceptions to the ratification of the sale, but the only two of importance are: "1. Because there has been no default in the mortgage herein proceeded on. * * * 4. Because no sufficient notice of sale was given."

The contention of the appellee is that, according to the terms of the mortgage, the interest was payable quarterly in advance; that the first quarterly interest was deducted at the time of the execution of the mortgage, and that the next date upon which interest was legally due and demandable was three months from August 1st, or November 1st, 1923. On the other hand, the contention of the appellant is that the mortgage did not provide or require that interest should be paid in advance, and that after the payment of the first

quarterly interest at the time of the execution of the mortgage there was no further interest due or demandable until February 1st, 1924, thereby giving the appellant six months during which to collect rents from said property and be in a position to pay the interest when next due. The rule is that interest accumulates from day to day but is not payable until the date upon which the principal becomes due and payable, unless there is a different contract between the parties as to the payment of interest. The loan in this case, which was secured by the mortgage, was to be repaid at the expiration of two years from August 1, 1923, and with no stipulation as to the time of payment of interest, the interest on the whole amount would have been payable at the time the principal of the loan was payable. The stipulation in the mortgage, however, in respect to interest is as follows:

"Whereas, the said mortgagee hath this day lent unto the mortgagors the sum of thirty-two hundred ($3,200.00) dollars, to be repaid two years after date, with interest at six per cent., payable quarterly on the first days of August, November, February, May, and for which principal sum of thirty-two hundred ($3,200.00) dollars, the said mortgagors have passed unto the mortgagee their negotiable promissory note of even date herewith payable two years after date, with interest aforesaid."

This clause of the mortgage clearly expresses an agreement between the parties that interest on the loan secured by the mortgage was to be paid quarterly on the first days of August, November, February and May, and it is contended that a proper construction of this clause means that the said interest is payable in advance, for the reason that the first day of August is the time first named as an interest-payment date, and then follows November, February, and May, and that the testimony of what took place between the parties at the time of the execution of the mortgage indicates that it was understood the interest was to be paid in advance, from the fact that the settlement sheet showed a deduction of the first quarterly interest at that time.

If we confine the inquiry to an examination of the language used in this clause of the mortgage, we find that that language is susceptible to a construction for the payment of interest either at the end of each quarter during the continuance of the loan, or in advance. The ordinary and usual time of paying interest is at the expiration of definite fixed periods during the continuance of the loan. This usage or custom is based upon the theory that payment of interest is in the nature of a sum of money given as compensation for the use of the principal sum for the definite period specified, and is in this respect analogous to the payment of rent or the hire of personal property. If there is no agreement to the contrary, rent is payable at the expiration of a definite period of occupancy by the tenant; hire for the use of personal property is payable after the property has been so used; and interest for the use of money is payable at the certain specified times after the borrower has had the use of the principal for the specific time for which interest is charged. Unless there is an explicit agreement to the contrary there was no interest due by the appellant until the time named in the mortgage for payment of interest, which first occurred after the appellant had had the use of the money borrowed from the appellee, to wit: November 1st, 1923. The evidence shows that at the time this loan was made to the appellant, she was threatened with foreclosure of a mortgage then on the property and that she was willing to make terms most favorable to the mortgagee. There can be little doubt that if the mortgagee had insisted that the interest should be payable in advance, the mortgagor would have consented thereto. Again, the evidence shows that the loan was secured from the appellee by Alvin R. Whiting, an attorney, who occupied an adjoining office to and was a tenant of the mortgagee, and that for obtaining this loan he charged and received a commission of ten per cent, amounting to $320.00, fifty per cent. of which sum was turned over to the mortgagee; this being equivalent to the mortgagee charging and receiving, in the shape of interest and commission seventeen per cent. for a loan of money for two years. Under the

decisions of this Court, usury cannot be urged as an objection to the ratification of a sale, and can only arise upon the statement of a final account by the auditor. *Smith* v. *Meyers,* 41 Md. 425. But the usurious charge in this case is an incident which, with a number of others, creates an atmosphere which does not impress a court of equity as being frank and fair on the part of the appellee. The appellee having it entirely in his control and power and having drawn the mortgage, if it was the real understanding and intention of the parties that interest should be paid in advance, it should have been so expressed in the mortgage in language unambiguous and unmistakable. In *Broom's Legal Maxims,* the author, in discussing the maxim *verba chartarum fortius accipiuntur contra proferentem* states: "The rule of law, moreover, that a man's own acts shall be taken most strongly against him, not only obtains in grants but extends in principle to all other engagements and undertakings." In *Brantly on Contracts* (2nd ed.), p. 289, this author states: "Where doubt exists as to the construction of a contract as a whole, or uncertainty as to its meaning, the words are to be taken most strongly against the party employing them." In 6 *R. C. L.,* sec 242, it is stated: "A written contract should, in case of doubt, be interpreted against the party who has drawn the contract. Sometimes the rule is stated to be, that where doubt exists as to the construction of an instrument prepared by one party thereto, upon the faith of which the other has incurred an obligation, that construction will be adopted which will be favorable to the latter." And this principle has been adopted and applied by this Court in the case of *McEvoy* v. *Security Fire Ins. Co.,* 110 Md. 275. As stated in 13 *C. J.* 516: "Where a contract is ambiguous it will be construed most strongly against the party preparing it or employing the words concerning which suit arises, the reason for the rule being that a man is responsible for ambiguities in his own expressions and has no right to induce another to contract with him on the supposition that the words mean one thing while he hopes

the court will adopt a construction by which they will mean another thing more to his advantage."

In this case the mortgagee prepared the mortgage and made his own choice of the words to express the contract. It would not have been difficult for him to use language the meaning of which would not admit of different constructions by simply putting in the contract that the quarterly interest was to be paid in advance; and while he testifies that he explained to the appellant that the language used was intended to mean that the interest should be paid in advance, yet this evidence is directly and flatly contradicted by the appellee and other witnesses. These circumstances present a case where the application of the rule above stated should be made. The appellee having had the opportunity to remove all doubt as to whether interest should be paid in advance, and not having done so, the doubt should be resolved against him and in favor of the appellant.

The other important question presented by the exceptions is whether or not the advertisement was a compliance with the law. It will be seen from portions of the mortgage hereinbefore set forth that the mortgagors assented to the passing of a decree by the Circuit Court No. 2 of Baltimore City for the sale of the property herein mortgaged, in accordance with chapter 123, sections 720 to 732, inclusive, of the Laws of Maryland, passed at the January session in the year 1898, or any supplements or additions thereto, and that the mortgagee proceeded to sell the property in accordance with this assent by obtaining the decree for sale. By the terms of the decree it was provided, after naming the trustee to make said sale, that "he shall then proceed to make the said sale, having given at least three weeks' notice by advertisement, inserted in such daily newspaper or newspapers published in the City of Baltimore as he shall think proper, of the time, place, manner, and terms of said sale." The advertisement was inserted for the first time in the Daily Record issued on November 12th, 1923, and the sale took place on December 3rd, 1923. November 12th, 1923, was on Monday, and December 3rd, 1923, was the third Monday following the

date of the first insertion of the advertisement of sale. The decree in this case was passed pursuant to the provisions of the laws of Maryland passed at the January session, 1898, being chapter 123, sections 720-732, and being the Baltimore City Charter. By section 720 it is provided:

> "In all cases of conveyances of lands or hereditaments or of chattels real, or goods and chattels personal, situate in the said city, wherein the mortgagor shall declare his assent to the passing of a decree for the sale of the same, it shall be lawful for the mortgagee or his assigns at any time after filing the same to be recorded, to submit to either of the Circuit Courts of Baltimore City the said conveyances or copies thereof, under seal of the Superior Court; and the circuit court to which the same is so submitted may thereupon forthwith decree that the mortgaged premises shall be sold at any one of the periods limited in said conveyances for the forfeiture of said mortgages or limited for a default of the mortgagors, and on such terms of sale as to the said sourt may seem proper, and shall appoint by said decree a trustee or trustees for making such sale, and shall require bond and security for the performance of the trust  as is usual in cases of sales of mortgaged premises."

Section 721 provides:

> "The trustee or trustees so appointed, after having given bond with security, may after the arrival of the period limited by the decree for a sale, sell, agreeably to the terms of said decree, the mortgaged property or any part thereof."

The proceeding in this case is entirely statutory, and in order to make a valid sale under its provisions it is incumbent upon the party proceeding to make such sale to comply strictly with the provisions of the statute. The statute here provides that the judge of the court to whom the case is submitted may appoint a trustee or trustees for making such sale, and that the said trustee or trustees, after having given bond, and after the arrival of the period limited by the decree

for sale, sell the property, agreeably to the terms of said
decree. The terms of the decree are, by force of the statute,
made a part of the statute and must be as fully and strictly
complied with as if they were in terms embraced in the
statute. Among the terms of the decree of sale is the provi-
sion that the trustee shall make the sale after having given at
least three weeks' notice by advertisement inserted in such
daily newspaper or newspapers, published in the City of
Baltimore, as he shall think proper, of the time, place, man-
ner and terms of sale. The period of advertisement, as pre-
scribed by the decree, is at least three weeks, and the meaning
of this language is no longer open to discussion in this State,
this Court having decided that "at least three weeks" means
"three clear weeks," and that in determining what space of
time constitutes three clear weeks, the date of the first publi-
cation of the advertisement and the day of sale shall both be
excluded. *Walsh* v. *Boyle,* 30 Md. 262; *Stewart* v. *Meyer,*
54 Md. 455; *Graham* v. *Wellington,* 121 Md. 656; *Byrd* v.
*Day,* 138 Md. 442. It follows that, in the computation of
time of advertisement in this case, the 12th day of November,
1923, being the day of the first publication of the advertise-
ment, and December 3rd, 1923, being the day of the sale,
should both be excluded, and that when this is done there
remain twenty days, which is less than three weeks.

If we were disposed, or had the power under other condi-
tions, not to hold parties to the strictest compliance with
statutory provisions when it would be unjust and inequitable
to do so, we find nothing in this case which appeals to a court
of equity on behalf of the appellee. He had the opportunity,
by inserting proper language in the mortgage drawn by
himself, to free its terms from all ambiguity. This was not
done, and in addition thereto, his acts have every appearance
of compelling one under financial obligation to him to comply
with terms and conditions unusual and not customary. With-
out detailing more of the evidence, it is sufficient to say that
it shows that the appellee never notified the mortgagor that
he considered the interest was in default, but promptly filed
his petition and secured a decree for the sale of the property,

and when approached by the mortgagor, after learning that the property had been advertised under the mortgage, in an effort to make terms which would prevent the sale, the mortgagee's disposition and attitude was to stand upon the hard and rigid terms of the mortgage and to demand from the mortgagor every penny that it was possible to recover. When the mortgagor appealed to him to stop the sale, his reply was that she must pay the full amount of the mortgage debt, principal and interest, together with the costs incident to the foreclosure, decree, and advertisement, amounting to several hundred dollars.

Without prolonging the discussion in this case, it will be seen from what we have said that the court below erred in passing its decree overruling the exceptions and ratifying the sale, and that its action in so doing must be reversed.

> *Decree reversed and case remanded in order that a decree may be passed in accordance with the views herein expressed, with costs to the appellant.*