DAVE B. KIRSNER *v.* SUN MORTGAGE COMPANY.
[No. 35, January Term, 1928.]

*Decided April 4th, 1928.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Walter C. Mylander,* with whom was *Charles M. Armstrong* on the brief, for the appellant.

*J. Kemp Bartlett, Jr.,* with whom were *Louis S. Ashman* and *Milton B. Edelson* on the brief, for the appellee.

DIGGES, J., delivered the opinion of the Court.

The appeal in this case is from a decree by the Circuit Court No. 2 of Baltimore City in favor of the Sun Mortgage Company, appellee, against Dave B. Kirsner, appellant, for the sum of $1,986.62, with interest from date, and $3.80 costs; the said sum being the deficiency found by the auditor to be due from Dave B. Kirsner, Ellis Praeger and Harry

Saxon, under the terms of a mortgage dated the 17th day of June, 1924. The facts giving rise to this decree may be summarized from the record as follows: Immediately prior to June 17th, 1924, Kirsner was the owner of three leasehold lots or parcels of ground in Baltimore City, which on or about that date he sold to Praeger and Saxon, and agreed with them to assist in financing their purchase. In accordance with that understanding they applied for and received a loan of $6,000 from the appellee, being recited in the mortgage as a part of the purchase price of the property. In order to secure the loan a mortgage was given by Praeger, Saxon, and Kirsner on the property. On the same day, by an agreement of that date, Kirsner deposited, as additional security for the repayment of the $6,000, the sum of $600 with the State Building & Loan Association. The portions of the mortgage necessary to be specially considered are:

"This mortgage, made this seventeenth day of June in the year one thousand nine hundred and twenty-four by and between Ellis Praeger, Harry Saxon and Dave B. Kirsner of the City of Baltimore, in the State of Maryland of the first part (mortgagors), and the Sun Mortgage Company, a corporation, of the second part (mortgagee). Whereas, the parties of the first part (mortgagors), are justly indebted unto the party of the second part (mortgagee), in the sum of six thousand dollars ($6,000), for money this day loaned and advanced (being part of the purchase price of the hereinafter described property), for the repayment of which principal sum, together with interest to accrue thereon at the rate of six per centum per annum, payable semi-annually, the mortgagors have made and passed their promissory note of even date herewith, drawn payable to the order of the mortgagee, for the said principal sum of six thousand dollars, and payable one year after date; said principal note bearing interest at the rate of six per centum per annum, payable semi-annually. To better secure the repayment of this mortgage and mortgage indebtedness, and any renewals or extensions thereof (and the

holder of this mortgage may renew or extend payment of this mortgage and unpaid mortgage indebtedness upon the request of any one or all of the mortgagors or upon the request of any party interested in the title or ownership in or to any of the premises herein described), these presents are executed. Now this mortgage witnesseth, that in consideration of the premises and of the sum of one dollar, the said Ellis Praeger, Harry Saxon and Dave B. Kirsner do grant, assign and convey unto the Sun Mortgage Company, its successors and assigns, all those three lots or parcels of ground situate and lying in Baltimore City at present known as No. — and described as follows."

Then follows the description:

"Being the same three lots of ground and premises as those described in an assignment, bearing even date herewith, from Dave B. Kirsner to Ellis Praeger and Harry Saxon, and intended to be recorded among the Land Records of Baltimore City immediately prior hereto. The said Dave B. Kirsner joins in this mortgage for the purpose of becoming bound on the personal covenants contained herein, and for the repayment of the indebtedness secured by this mortgage, but has no interest in the property herein described."

The mortgage contains an assent to the passing of a decree by the Circuit Court of Baltimore City or the Circuit Court No. 2 of Baltimore City for a sale of the property mortgaged, in accordance with sections 720 to 732, inclusive, chapter 123 of the Acts of 1898, or any supplements or additions thereto; and then provides:

"And it is agreed, that, until default be made in the premises (but not thereafter) the said parties of the first part, their successors, executors, administrators or assigns, shall possess the aforesaid property upon paying in the meantime, the ground rent aforesaid, and all taxes, assessments, public dues and charges levied or assessed, or to be levied or assessed, on said

hereby mortgaged property, and on the mortgage debt and interest hereby secured; which taxes, ground rent, mortgage debt and interest, public dues, charges and assessments, the said parties of the first part covenant to pay when legally payable."

Finally the mortgage is thus executed:

"Witness the hands and seals of the said mortgagors: Ellis Praeger (Seal), Harry Saxon (Seal), Dave B. Kirsner (Seal).

"State of Maryland, City of Baltimore, ss: I hereby certify that on this seventeenth day of June, in the year one thousand nine hundred and twenty-four; before me, the subscriber, a notary public of the State of Maryland, in and for the city or county aforesaid, personally appeared Ellis Praeger, Harry Saxon and Dave B. Kirsner, the mortgagors named in the foregoing mortgage and they acknowledged the foregoing mortgage to be their act. At the same time also appeared Edward J. Lee, the vice-president of the Sun Mortgage Company, the mortgagee herein named, and made oath in due form of law, that the consideration set forth in said mortgage is true and *bona fide* as therein set forth; and also made oath that he is the agent of the mortgagee, with authority to make this affidavit. As witness my hand and notarial seal. Mary M. Ehudin, Notary Public."

On June 15th, 1925, two days prior to the mortgage becoming due, it was extended for one year, upon application of Ellis Praeger, one of the mortgagors, which application for extension had the names of Harry Saxon and Dave B. Kirsner signed thereto, "per E. Pagt." On July 17th, 1926, one month after the expiration of the extension, the mortgage not having been paid, a decree was passed by the Circuit Court No. 2 of Baltimore City for the sale of the property, in accordance with the consent to such decree contained in the mortgage. Under the power contained in this decree the property was sold, the report of sale finally ratified by the

court, and the case submitted to the auditor. On January 5th, 1927, the auditor filed his account showing, after allowing for the costs and expenses of the sale, a balance of $1,-896.59 due the mortgagee. On the same day an order *nisi* was passed, warning that the report and account of the auditor would be ratified and confirmed as stated by the auditor, unless cause to the contrary be shown within ten days from that date. There being no exceptions filed within the time prescribed, the audit was finally ratified and confirmed on January 17th, 1927. On the last mentioned date the mortgagee filed its motion praying that a decree *in personam* for the deficiency might be entered by the court against the mortgagors, Praeger, Saxon, and Kirsner, upon due notice being given, by summons or otherwise, as the court might direct. The chancellor ordered that a subpoena issue directed to Praeger, Saxon, and Kirsner, commanding them to appear on the second Monday in February, 1927, to answer the motion and show cause, if any they had, within fifteen days from the return of the writ, why a decree should not be entered as prayed. Praeger and Saxon failing to answer, a decree was entered against them on May 28th, 1927. Kirsner answered the motion for the deficiency decree, setting up reasons why the decree should not be entered against him. Subsequently the court took testimony on the motion and answer thereto, and, after argument, passed the decree from which, as stated, this appeal was taken.

The questions to be decided on the appeal are: (1) Whether or not a claim for alleged usury in the making of a mortgage can be raised after the final ratification of the auditor's account; (2) whether the extension of the maturity of a mortgage without notice to one of the makers releases that maker from liability, when the mortgage which he has signed contains such a clause for renewal as is in this mortgage; and (3) whether or not a person who signs a mortgage as one of the mortgagors, and who signs the mortgage note as a maker, is such a person as described in section 731A of the Baltimore City Code (chapter 327 of the Acts of 1898), against whom a deficiency decree may be entered?

This court has held that the usurious character of a mortgage is no ground for setting aside a mortgage foreclosure sale, and stated that the question of usury should be determined at the time of the audit. "The question as to usury in the mortgage can only arise upon the statement of the final account of the auditor. It cannot be urged as an objection to the ratification of the sale." *Miller's Equity Proc.*, p. 563. The above statement of the author is supported by the decisions of this court. *Md. Perm. Land & Bldg. Soc. v. Smith,* 41 Md. 516; *Smith v. Myers,* 41 Md. 425; *Equitable Mutual Land Imp. Assn. v. Becker,* 45 Md. 632; *Buckner v. Cronhardt,* 132 Md. 612; *Boynton v. Remson,* 133 Md. 101; *Owens v. Graetzel,* 146 Md. 361. In the case first above mentioned the court, in dealing with objections to the ratification of sale of mortgaged property, said: "The same may be said of the objection that the terms of the mortgage are usurious. That question can only arise upon the statement of the final account by the auditor and cannot be urged as an objection to the sale." The same or similar language has been used in the other cases above cited, the court saying in *Owens v. Graetzel, supra,* "Under the decisions of this court, usury cannot be urged as an objection to the ratification of a sale, and can only arise upon the statement of a final account by the auditor. *Smith v. Myers,* 41 Md. 425." It is true that in those cases usury was being urged as an objection to the ratification of the sale, which was held to be improper, but in all of those cases the court indicated clearly that the proper method and time to raise the question of usury in respect to a mortgage which had been foreclosed was by filing exceptions to the ratification of the auditor's report. This would seem to be the logical time and method, because it is then that the court is passing upon the proper distribution of the proceeds of sale, and there determines to whom and in what amount those claiming any part of the proceeds are entitled. In the present case the record discloses that the appellant was present at the sale of the property and knew the amount for which it

sold, in addition to the constructive notice which he had by the report of the sale to the court. The auditor stated an account, in which was shown the amount of proceeds from the sale, the deductions made therefrom for costs and expenses, the amount applied towards payment of the mortgage debt, and the balance due on the mortgage. Upon the filing of this report and account, the usual order *nisi* was passed thereon, affording an opportunity to the appellant or any other person interested in the distribution of the fund to appear and show cause why the report and account of the auditor should not be finally ratified. This the appellant failed to do, but now comes in, and as one objection to the entering of a personal decree against him for the balance due on the mortgage, for the first time alleges that the mortgage is usurious. There is nothing in the law which prevents one from paying usurious interest, if he so desires, and, if he has been charged usurious interest, he is not bound to plead it in an action against him for an amount which includes the usurious charge. It must follow that if he has an opportunity to make the defense of usury at the time and in the manner pointed out by the decisions of this court, and fails to do so, he cannot now, in a proceeding such as this, set up usury as a defense to the decree herein entered against him.

The second objection urged against the decree is that, the mortgage having been for one year, at the expiration of which time, if no extension had been made, the property would have sold for a sum sufficient to satisfy in full the mortgage debt and interest, because the appellant did not join in the application for the renewal, he should not be charged with a deficiency which now exists, but which he alleges would not have existed had the mortgage been foreclosed at or about the time it was renewed. There can be no force in this contention, for the reason that in the mortgage signed by the appellant he agrees and covenants that the mortgagee may extend or renew the mortgage upon the request of any one or all of the mortgagors, or upon the request of any party inter-

ested in the title or ownership in or to any of the premises therein described. There is no denial that Praeger, one of the mortgagors, made request in writing to the mortgagee for the renewal of extension, and it was upon this request or application that the same was made. It therefore is unnecessary to determine whether Praeger, who apparently signed the appellant's name to the extension, was authorized to do so or not, because Praeger's request alone was sufficient authority, under the express terms of the mortgage.

The question raised by the third objection, in our opinion, is equally free from difficulty. The statute, under the authority of which the deficiency decree in this case was entered, definitely describes the parties against whom such a decree may be entered, being contained in chapter 327 of the Acts of 1898, now section 731A of the Baltimore City Code of 1927. It provides: "If, upon a sale of the whole mortgaged property by virtue of a decree passed under an assent to the passing of a decree contained in the mortgage under the provisions of section 720 of this article, the net proceeds of sale, after the cost and expenses allowed by the court are satisfied, shall not suffice to pay the mortgage debt and accrued interest, as the same shall be found and determined by the judgment of the court upon the report of the auditor thereof, the court may, upon the motion of the plaintiff, the mortgagee or his legal or equitable assignee, after due notice, by summons or otherwise, as the court may direct, enter a decree *in personam* against the mortgagor or other party to the suit or proceeding, who is liable for the payment thereof, for the amount of such deficiency; provided the mortgagee or his legal or equitable assignee would be entitled to maintain an action at law upon the covenants contained in the mortgage for said residue of said mortgage debt so remaining unpaid and unsatisfied by the proceeds of such sale or sales; which decree shall have the same effect and be a lien as in a case of a judgment at law, and may be enforced in like manner by a writ of execution in the nature of a writ of *fieri facias* by attachment or otherwise."

The language is that such a decree may be entered "against the mortgagor or other party to the suit or proceeding, who is liable for the payment thereof, * * * provided the mortgagee * * * would be entitled to maintain an action at law upon the covenants contained in the mortgage for said residue of said mortgage debt so remaining unpaid and unsatisfied." The question is, therefore, Is Dave E. Kirsner a "mortgagor or other party to the suit or proceeding, who is liable for the payment thereof," against whom an action at law might be maintained upon the covenants contained in the mortgage? There can be no doubt that he is. It is true that he had no title to the property mortgaged, and the appellant argues that for this reason he is not a mortgagor. It must be admitted that in the ordinary acceptation of the term, a mortgagor is a person who pledges property belonging to him for the payment of a debt; but in our opinion, it is not necessary that a person have an interest in the property covered by the mortgage in order to make himself liable on the covenants contained therein. The property is pledged to secure the faithful performance of the covenants contained in the mortgage; but the property pledged may be entirely destroyed, without in any way affecting the liability of those signing the instrument on the covenant to pay the debt. The mortgage itself provides that the conveyance of the property is to better secure the payment of the mortgage note and the debt represented thereby, which debt Dave B. Kirsner personally covenanted to pay; and whether one calls him a mortgagor or not, he is certainly liable under the personal covenant to pay the debt. There is contained in the mortgage a covenant to pay the debt, for which the property is pledged as collateral, and Kirsner, having signed the covenant under seal, is liable thereon; but in addition, he expressly says in the mortgage that he joins in the mortgage "for the purpose of becoming bound on the personal covenants contained herein and for the repayment of the indebtedness secured by the mortgage." Surely, therefore, he is a party to this suit or proceeding, who is liable for the

payment thereof, and such a party against whom an action at law upon the covenant to pay the debt might be successfully maintained. Kirsner comes definitely and expressly within the language describing those against whom such deficiency may be decreed. We do not desire to be understood as deciding that the appellant, under the circumstances in this case, is not a mortgagor simply because he has no interest in the property covered by the mortgage. He describes himself in the mortgage as a mortgagor, signs and acknowledges it as a mortgagor, particularly makes himself liable on all of the personal covenants to the same extent as those signing with him who have an interest in the land, and he receives the money secured by the mortgage as a part of the purchase money of the property sold by him. The other two parties to the instrument pledged land, while he pledged $600 in cash, and it is difficult to distinguish his status from that of the other two. But even if he were not a mortgagor, he is certainly a party to the suit or proceeding who is liable for the payment of the mortgage debt and interest, and if so, by the express terms of the statute, such a decree as has been entered here, could be passed against him. In the recent case of *Kushnick v. Lake Drive Bldg. & Loan Association,* 153 Md. 638, an entirely different situation is presented. In that case Kushnick signed the mortgage for the "purpose of further guaranteeing the covenants and conditions," and while it is true that he signed the mortgage, the statement of his purpose for signing it showed a qualified liability, which this court determined was that of a guarantor. In that case Judge Offutt, speaking for the court, said: "When the Legislature said that such a decree could only be entered against a party to the proceeding, and then only where the mortgagee could have maintained an action at law on the covenants contained in the mortgage, it must have meant that such a decree could only have been entered against a party to the foreclosure proceeding liable in an action at law on the covenants contained in the mortgage." The test there laid down was that the party against whom

the deficiency decree is sought must be a party to the foreclosure proceeding liable in an action at law on the covenants contained in the mortgage. Applying that test, it is clear that Kirsner is a proper party to the foreclosure proceeding and would be primarily liable in an action at law on the covenants contained in the mortgage; and this fact clearly differentiates the present case from the *Kushnick* case, where Kushnick was only liable as a guarantor. We find no error in the decree appealed from. See also *Bletzer v. Cooksey,* 154 Md. 568.

*Decree affirmed, with costs to the appellee.*