# MARYLAND NATIONAL BANK v. JOHN A. WATHEN

[No. 127, September Term, 1979.]

*Decided June 24, 1980.*

120

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Allan P. Feigelson* for appellant.

*Mark J. Davis,* with whom were *Albert J. Matricciani, Jr.,* and *Ann DeNovo* on the brief, for appellee.

COLE, J., delivered the opinion of the Court.

In this case we are asked to decide whether a secured party, who, after default by the debtors, repossesses the collateral and conducts the sale thereof, is barred from suing for a deficiency because he failed to notify the debtor of the sale.

The facts are not in dispute. Roger Lee Wathen purchased an automobile; the Maryland National Bank extended credit and took a security interest therein. Roger, his wife, Cynthia, and his father, John were all listed as debtors on the Note and Security Agreement and all three signed as debtors. On the line opposite Roger's name appears the notation "Box #2." On the next line, opposite Cynthia's name appear the words "Faulkner, Maryland 20632." There is no address opposite John's name. After default and repossession, the Bank sent to Roger at Box #2, Faulkner, Maryland 20632 written notice of the proposed sale of the collateral. No notice was sent to John and John had no actual knowledge of the sale until service of the Bank's declaration and motion for summary judgment claiming a deficiency resulted from the public sale of the automobile. John, in response, filed his own motion for summary

judgment contending he had not been notified of the sale. The Circuit Court for Charles County granted John's motion and the Bank noted an appeal to the Court of Special Appeals. We granted certiorari prior to consideration by that court.

The Bank, while conceding that John was a debtor entitled to notice, contends that its failure to notify John was an oversight. It contends that the absolute denial of a deficiency judgment amounts to an arbitrary release of the debtor and is a result not contemplated by the Uniform Commercial Code. It urges this Court to follow those courts which allow the secured party a deficiency judgment only to the extent of the difference between the fair market value of the collateral and the obligations secured, if the secured party can overcome a rebuttable presumption that the value of the collateral is equal to the obligation secured. Such holding by this Court, the Bank contends, would reduce the deficiency only to the extent of the debtor's actual damages thereby penalizing the secured party for failing to obtain the fair market value. Contrary to the Bank, John contends that the trial court was correct in ruling that failure to notify the debtor of the proposed sale is an absolute bar to a suit for a deficiency judgment.[1]

We have not addressed this precise question before and thus we shall begin our analysis by examining certain sections of the Maryland Code (1975), included in the Commercial Law Article (U.C.C.). Section 9-504 of the U.C.C. is entitled "Secured party's right to dispose of collateral after default; effect of disposition." In pertinent part, § 9-504 (3) provides:

Disposition of the collateral may be by public or

---

1. The contentions of the parties highlight the sharp division among the courts which have decided this issue. For courts which impose an absolute bar when notice is not sent *see* Skeels v. Universal C.I.T. Credit Corp., 222 F. Supp. 696 (W.D. Pa. 1963), *modified on other grounds*, 335 F.2d 846 (3d Cir. 1964); Randolph v. Franklin Investment Co., 398 A.2d 340 (D.C. 1979); Leasco Data Processing Equipment Corp. v. Atlas Shirt Co., 66 Misc. 2d 1089, 323 N.Y.S.2d 13 (Civ. Ct. 1971). For courts rejecting the absolute bar *see* Weaver v. O'Meara Motor Co., 452 P.2d 87 (Alas. 1969); Norton v. National Bank of Commerce of Pine Bluff, 240 Ark. 143, 398 S.W.2d 538 (1966).

> private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place, and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market *reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor* .... [emphasis added.]

Initially we note that an automobile does not come within the exceptions set forth in subsection (3); it is not perishable, subject to a speedy decline in value, nor "of a type customarily sold on a recognized market." A recognized market has been described as a "stock market or a commodity market, where sales involve many items so similar that individual differences are nonexistent or immaterial, where haggling and competitive bidding are not primary factors in each sale and where the prices paid in actual sales of comparable property are currently available by quotation." *Norton v. National Bank of Commerce of Pine Bluff,* 240 Ark. 143, 398 S.W.2d 538, 540 (1966). There is no recognized market for used cars. The price of the same model used car will vary according to its condition or the whim of the purchaser. We conclude then that § 9-504 (3) requires reasonable notification of the time and place of any proposed sale and further that the requirement that the sale be commercially reasonable does not afford the debtor sufficient assurance that full value will be given for the collateral.

Our conclusion is undergirded by the interrelation of the provisions of the code which were apparently drafted so that the debtor is afforded a reasonable opportunity to protect his

interests. Section 9-506 [2] of the U.C.C. expressly bestows upon the debtor the opportunity to redeem the collateral by tendering payment of the balance due. It is manifest that the debtor without notice of the sale can be effectively prevented from exercising his right of redemption. Furthermore even if the debtor is not in a position to redeem, if he has notice, he may still be able to refinance and must therefore be capable of arranging for potential creditors to inspect the collateral. Alternatively, a debtor with notice may be able to procure interested buyers to drive up the level of competitive bidding. At the very least, notice provides the opportunity to attend the sale to insure that it is commercially reasonable. To permit recovery of a deficiency judgment absent notice would effectively nullify these important debtor's rights and permit "a continuation of the evil which the Commercial Code sought to correct . . . . It was the secret disposition of collateral by chattel mortgage owners and others which . . . the Code sought to correct." *Skeels v. Universal C.I.T. Credit Corp.,* 222 F. Supp. 696 (W.D. Pa. 1963), *modified on other grounds,* 335 F.2d 846 (3d Cir. 1964). We see no need to undermine the protection which these provisions were intended to afford.

Our conclusion is reinforced by the juxtaposition of the interests of the debtor with the ease with which the secured party may comply with the notice requirements. Section 9-504 (3) requires only reasonable notification; there is not even the requirement that such notification be in writing particularly where the debtor has actual knowledge of the proposed sale. *Crest Inv. Trust v. Alatzas,* 264 Md. 571, 287 A.2d 261 (1972). All the creditor need do to protect his own

---

**2.** Maryland Code (1975), § 9-506 of the Commercial Law Article provides:

> At any time before the secured party has disposed of collateral or entered into a contract for its disposition under § 9-504 or before the obligation has been discharged under § 9-505 (2) the debtor or any other secured party may unless otherwise agreed in writing after default redeem the collateral by tendering fulfillment of all obligations secured by the collateral as well as the expenses reasonably incurred by the secured party in retaking, holding and preparing the collateral for disposition, in arranging for the sale, and to the extent provided in the agreement and not prohibited by law, his reasonable attorneys' fees and legal expenses.

interests is obey the uncomplicated mandate of the law — send reasonable notice. We do not believe that conditioning his right to a deficiency judgment upon such a simple procedure does violence to the spirit of commercial reasonableness.[3]

At oral agrument, the Bank suggested that the debtor's exclusive remedy (to recover from the secured party any loss caused by a failure to comply with the U.C.C.'s post-default procedures) was in § 9-507.[4] We do not agree. Section 9-507 is not structured as a defense to a deficiency judgment but as an affirmative remedy for damages already sustained. These damages (presumably the difference between fair market value and the sale price) do not in any way serve to relieve the debtor's loss of his ability to redeem or refinance the collateral or drive up its sale price. The words "exclusive remedy" do not appear in § 9-507 and in light of § 1-103 of the Commercial Law Article may not permissibly be read to be included in the meaning of § 9-507. Section 1-103[5]

---

**3.** Another factor which has been given consideration is the positioning of the provisions. One court taking note that it is § 9-504 which gives the secured party a right to a deficiency judgment as well as requires notice of the sale concluded that: "[T]he natural inference that the right depends upon compliance is forcefully underlined by the joining of the provisions in one section." Leasco Data Processing Equipment Corp. v. Atlas Shirt Co., *supra* note 1, 323 N.Y.S.2d at 16.

**4.** Maryland Code (1975) § 9-507 of the Commercial Law Article provides in part:

If it is established that the secured party is not proceeding in accordance with the provisions of this subtitle disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this subtitle. If the collateral is consumer goods, the debtor has a right to recover in any event an amount not less than the credit service charge plus 10 percent of the principal amount of the debt or the time price differential plus ten percent of the cash price.

**5.** Maryland Code (1975) § 1-103 of the Commercial Law Article provides in part:

Unless displaced by the particular provisions of Titles 1 through 10 of this article, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions, except that . . . .

provides that unless displaced by the particular provisions of the U.C.C., prior law shall supplement the provisions therein. *Universal v. Congressional,* 246 Md. 380, 228 A.2d 463 (1967). According to courts and text writers who have examined the question, the principle was firmly established under the Uniform Conditional Sales Act (not enacted in Maryland) that the right to a deficiency judgment depended upon precise compliance with statutory notice requirements. *Camden National Bank v. St. Clair,* 309 A.2d 329 (Me. 1973); *Leasco Data Processing Equipment Corp. v. Atlas Shirt Co.,* 66 Misc. 2d 1089, 323 N.Y.S.2d 13 (Civ. Ct. 1971); 2G. Gilmore, *Secured Interests in Personal Property* § 44.9.4, at 1261 (1965); J. White and R. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 26-15, at 1000 (1972); Sachs and Belgrad, *Liability of the Guarantor of Secured Indebtedness After Default and Repossession Under the Uniform Commercial Code: A Walk on the Wild Side by the Secured Party,* 5 U. Balt. L. Rev. 153 (1976). The same construction was generally given to other state statutes requiring resale of repossessed property. *See e.g., Atlas Thrift Co. v. Horan,* 27 Cal. App. 3d 999, 104 Cal. Rptr. 315 (1972); *Annot.,* 59 A.L.R.3d 401, 406 (1974); *Annot.,* 49 A.L.R.2d 15, 82 (1956). The drafters of the Uniform Commercial Code were certainly familiar with this settled rule of law and as one court concluded:

> If the authors of the U.C.C. proposed to overthrow the firmly established and generally accepted construction of the older statute denying recovery for a deficiency where there was not precise compliance with the notice requirement, they surely would have manifested that intent in clear and unambiguous language. In fact there is not the slightest intimation of any such purpose to be found in the U.C.C. The conclusion is inescapable that the prior interpretation continues to be applicable under the U.C.C. and that the failure of this plaintiff to follow the quite modest notice requirements of 9-504 (3) defeats absolutely the claim here asserted. [*Leasco Data Processing*

*Equipment Corp. v. Atlas Shirt Co., supra* 323
N.Y.S.2d at 15-16 (citation omitted).]

*Accord, Camden National Bank v. St. Clair, supra;* 2G.
Gilmore, *supra* at 1263-64.[6]

While we have not before addressed the requirement of notice in a factual context similar to this case, we have in our prior decisions regarding the required notice in other types of sales indicated an abiding concern for its strict observance. *See Fleisher Co. v. Grice,* 245 Md. 248, 226 A.2d 153 (1967) (foreclosure on real property); *Litteral v. Houser,* 221 Md. 403, 158 A.2d 75 (1960) (redemption of corporate stock); *Byrd v. Day,* 138 Md. 442, 114 A. 485 (1921) (tax sale). We now underscore our concern by holding that compliance with the notice provision of § 9-504 (3) is a condition precedent to recovery of a deficiency judgment.

*Judgment affirmed; appellant to pay
the costs.*

---

**6.** The realities of the commercial marketplace have also had some influence upon the decisions of some courts to bar deficiency judgments where notice has not been given. It has been pointed out that a secured creditor does not necessarily have an incentive to achieve the highest possible resale price. *See* Randolph v. Franklin Investment Co., *supra,* note 1.