815 F.2d 74
 3 UCC Rep.Serv.2d 865
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Matthew N. ZUPPAS, Plaintiff-Appellant,
v.
GENERAL ELECTRIC CREDIT CORP., Defendant Appellee.
Matthew N. ZUPPAS, Plaintiff-Appellee,
v.
GENERAL ELECTRIC CREDIT CORP., Defendant Appellant.
 Nos. 86-1148, 86-1157.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 5, 1987.
Decided March 27, 1987.
 
 Before PHILLIPS and SPROUSE, Circuit Judges, Robert R. MERHIGE, Senior United States District Judge, sitting by designation.
 Landon Gerald Dowdey, on brief, for appellant.
 H. Bradley Evans, Jr. (Thomas & Fiske, P.C., on brief), for appellee.
 PER CURIAM:
 
 
 1
 The debtor in this action, Matthew Zuppas, appeals the decision of the district court allowing the deficiency claim of one of his creditors, General Electric Credit Corp. (GECC). Zuppas asserts that GECC's claim should have been denied because GECC made abortive efforts to recover under an insurance policy owned by Zuppas in violation of the notice provisions of Sec. 9504(3) of the Uniform Commercial Code (UCC) and the stay provision of 11 U.S.C. Sec. 362. Because we agree that neither of these code sections provides a basis for denying GECC's claim, we affirm.
 
 
 2
 * The relevant facts are not in dispute. On August 23, 1978, GECC loaned Kittyhawk Saloon, Inc. (Kittyhawk), a restaurant owned primarily by Matthew Zuppas, $41,525.10 to purchase equipment. In exchange, Kittyhawk gave GECC a chattel mortgage on the equipment and Zuppas personally guaranteed the debt. The guaranty agreement executed by Zuppas was unconditional and did not require GECC to exhaust remedies against Kittyhawk or any other liable party before seeking recovery under the guaranty. In the same transaction, Zuppas purchased $30,000 of insurance coverage for loss or damage to the equipment through GECC's insurance program.
 
 
 3
 Successive fires on September 20 and October 25, 1979, destroyed the equipment and forced the restaurant out of business. Zuppas voluntarily applied for reorganization under Chapter 11 on May 29, 1980. The Chapter 11 petition listed GECC as a secured creditor. The parties stipulated that the amount outstanding on Kittyhawk's indebtedness at that time was $35,000.
 
 
 4
 GECC filed a claim with Great American Insurance Company, the insurer under GECC's insurance program, for the loss of the equipment. Great American refused full payment on the claim because criminal charges pending against Zuppas prevented GECC from providing Great American satisfactory proof of loss. Great American did, however, forward GECC $10,000 as a partial payment. GECC accepted this payment and applied $5,000 to the account at issue here and $5,000 to another outstanding account, but demanded that the claim be paid in full. This demand was never honored and the statute of limitations ran without GECC having filed a lawsuit against Great American. Neither Zuppas nor the bankruptcy court had any knowledge of the transaction between GECC and Great American.
 
 
 5
 On April 8, 1985, four years after it received the $10,000 payment from Great American, GECC filed a proof of claim for the amount outstanding on Kittyhawk's indebtedness. Zuppas challenged GECC's right to recover on this claim. The dispute was submitted to the bankruptcy court on stipulated facts and a stipulated statement of the issue to be resolved:
 
 
 6
 The parties hereby stipulate that the sole issue is whether the notice provisions of Section 9-503(3) of the Uniform Commercial Code and the stay provisions of Section 362 of the Bankruptcy Code were violated by GECC so as to bar recovery of its claim against the debtor.
 
 
 7
 The bankruptcy court ruled that Sec. 9-504 of the UCC applied only to the repossession of collateral and did not apply to the facts of this case. The court, however, did find that GECC had technically violated Sec. 362's automatic stay provisions. The court declined to totally disallow GECC's claim on this basis, but did award Zuppas interest on the $10,000 from the date it had been received by GECC until the date of the court's order.
 
 
 8
 On appeal the district court made de novo findings and affirmed the rulings of the bankruptcy court. This appeal and cross-appeal followed. Zuppas appeals the decision to allow GECC to collect the deficiency, and GECC appeals the award of interest on the $10,000 to Zuppas.
 
 II
 
 9
 In accordance with the stipulation of the parties we have limited our review to the specific question whether GECC's conduct violated Sec. 9-504 and Sec. 362 so as to bar recovery of its claim against Zuppas.
 
 
 10
 Section 9-504 of the UCC grants secured parties the right to sell, lease, or dispose of collateral after default in a commercially reasonable manner. Section 9-504(3) requires that the secured party give the debtor reasonable notice of the time and place of any public sale or of the time "after which any private sale or other intended disposition is to be made," except when the collateral is perishable or of a type customarily sold on a recognized market. This notice provision was designed to protect debtors against creditors who enhance their claims against debtors by disposing of collateral in a commercially unreasonable manner. To insure that debtors get the full measure of protection provided by Sec. 9-504(3), the Maryland Court of Appeals has held that a secured party's failure to provide the required notice absolutely bars recovery of a deficiency judgment against the debtor. Maryland National Bank v. Wathen, 414 A.2d 1261, 1265 (Md. 1980).
 
 
 11
 Zuppas argues that because GECC's security interest in the destroyed equipment continued in the insurance policy under UCC Sec. 9-306(1), the insurance policy was "collateral" that GECC was obligated under Sec. 9-504(3) not to "dispose" of its proceeds without giving him notice.
 
 
 12
 We disagree. Section 9-504(3) does not contemplate or guard against the type of conduct complained of here. The language of Sec.9-504 is focused on sales, leases, and other bargained-for exchanges of collateral for cash or accounts. Nothing in Sec. 9-504 hints that it can be applied to require a creditor to give notice of negotiations with an insurance company.
 
 
 13
 Further, in the typical Sec. 9-504(3) case, the creditor's misconduct in disposing of the collateral without notice prevents the debtor from taking any action to enhance the value of the collateral or to insure that it is sold for a fair price. Here there is no evidence that GECC's actions impaired Zuppas' ability to seek recovery on the policy. GECC did not "dispose" of the policy or of Zuppas' own contractual rights as the owner of the policy. Zuppas was presumably free throughout the limitations period to bring his own action against Great American. Section 9-504 was not designed to protect debtors whose access to the collateral is not impaired by the creditor's action.
 
 III
 
 14
 Zuppas also argues that GECC's conduct violated the automatic stay provision of 11 U.S.C. Sec. 362(a)(3) and that the only appropriate remedy for this violation is to bar GECC from seeking the deficiency. GECC asserts that it did not violate the stay because the insurance policy was not part of Zuppas' bankruptcy estate. Alternatively, GECC argues that even if it did violate the stay, the sanction imposed by the district court--interest on the $10,000 at six percent from the date it was received until the date of the district court's ruling--was excessive.
 
 Section 362(a) provides in pertinent part:
 
 15
 Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3)), operates as a stay, applicable to all entities, of
 
 
 16
 ...
 
 
 17
 (3) any act to obtain possession of property of the estate or property from the estate ....
 
 
 18
 The seizure of insurance proceeds that are part of the bankrupt's estate violates the automatic stay. Bradt v. Woodlawn Auto Workers, F.C.U., 757 F.2d 516 (2d Cir. 1985).
 
 
 19
 The district court's determination that the insurance policy was part of Zuppas' estate was not clearly erroneous. Zuppas purchased the policy and was listed as the owner of the policy in the correspondence between GECC and Great American. Further, the purpose of the policy was to protect Zuppas from liability under the guaranty should the property be lost. We agree therefore with the district court's conclusion that a "technical" violation of the stay occurred when GECC attempted to collect the proceeds.
 
 
 20
 Upon showing even a technical violation of the stay, the debtor is entitled to recover attorney's fees, costs, and damages. In re Newman, 53 Bankr. 7 (Bankr. M.D. Tn. 1985). The district court found that Zuppas suffered damages equal to the lost interest on the $10,000 from the time GECC received it from Great American to the time GECC properly established its claim. This determination is also not clearly erroneous.
 
 
 21
 Although Zuppas claims to have suffered damages equal to the entire amount of the deficiency as a result of GECC's violation of the stay, he has alleged no facts to support this claim. There is no evidence that Great American would have paid the full amount of the claim or that Zuppas or GECC would have filed an action against Great American within the limitations period if GECC had sought relief from the stay.
 
 
 22
 By violating the stay GECC obtained funds that should have remained in Zuppas' estate until GECC received relief from the stay. Because GECC rather than Zuppas had possession of the funds during this period of time, Zuppas was deprived of the interest his estate could have earned on these funds. The district court's remedy compensates Zuppas for this loss.
 
 
 23
 For the reasons discussed above, the decision of the district court is affirmed.
 
 
 24
 AFFIRMED.